UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAUREN LAPOLICE,<br><br>               Plaintiff,<br><br>v.<br><br>FAM, LLC,<br><br>               Defendant. | 23 Civ. 7091 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

Plaintiff Lauren LaPolice, who was terminated from her employment with Defendant FAM, LLC ("FAM") when she was approximately three months pregnant, brings claims for sex and pregnancy discrimination under Title VII and the New York City Human Rights Law. Before the Court is FAM's motion for summary judgment pursuant to Rule 56.[1] For the reasons stated below, FAM's motion for summary judgment is **GRANTED.**

## BACKGROUND[2]

This case is bought under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York City Human Rights Law ("NYCHRL"). On December 13, 2022, LaPolice was

---

[1] All references to Rules are to the Federal Rules of Civil Procedure.

[2] The facts recited below are undisputed, unless otherwise noted. On December 6, 2024, Defendant moved to strike several paragraphs in Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, *see* ECF No. 42, and Declaration of Lauren LaPolice dated November 4, 2024, *see* ECF No. 40. On December 20, 2024, Plaintiff cross-moved to strike the unsigned chart Defendant attached to its motion to strike as Exhibit D, ECF No. 46-6. *See* Pl.'s Cross Mot., ECF No. 48. A defendant faces a "heavy burden" to justify the drastic remedy of striking a plaintiff's testimony. *Schneidermesser v. NYU Grossman Sch. of Med.*, No. 21 Civ. 7179, 2024 WL 4054372, at *1 (S.D.N.Y. Sept. 5, 2024). The Court finds that several statements in LaPolice's Local Rule 56.1 response and the LaPolice Declaration are unsubstantiated and conclusory; accordingly, "it will not rely on any portion of [LaPolice's] Declaration [and Local Rule 56.1 response] that is not based upon the affiant's personal knowledge, contains inadmissible hearsay, or makes generalized and conclusory statements." *Id.* at *2. Similarly, the Court will disregard any unsubstantiated or otherwise improper statements made by Defendant in its Exhibit D chart.

terminated from her position as Senior Merchandising Manager at FAM. *See* Pl.'s Rule 56.1 Statement ("Pl.'s SOF") ¶¶ 12, 50, 51, ECF No. 42. At the time of her termination, LaPolice lived and worked in Connecticut, commuting to FAM's small New York City office about once per week. *See* Pl.'s SOF ¶¶ 4, 35. FAM is headquartered in Bell, California, where 310 out of its approximately 320 employees are located. Pl.'s SOF ¶¶ 2-3. An amendment to LaPolice's employment agreement, which she accepted, stated that she would spend "a minimum of five full working days per month in the LA office to be split between" FAM's two divisions. Pl.'s SOF ¶¶ 22-23. LaPolice disputes that she was "actually expected" to work five full days in the California office. Pl.'s SOF ¶ 22.

On or about October 23, 2022, LaPolice learned that she was pregnant. Pl.'s SOF ¶ 36. About a week later, at or around 5 p.m. New York time on October 31, she informed her co-worker and "self-described 'work mom,'" Theresa Jacobs, about her pregnancy. Pl.'s SOF ¶ 39. On November 8, she informed another co-worker, Dana Arfi, and on December 6, she informed a third co-worker, Fiona Gerbenshagen. Pl.'s SOF ¶¶ 42, 46. Sometime in November, during a private conversation between Jacobs and LaPolice, Jacobs told LaPolice that "being a mom can change you" and "you might not want to work" after having a baby. Pl.'s SOF ¶ 67. LaPolice intended that her three co-workers would keep her pregnancy private, and the three women testified that they did not tell anyone about her pregnancy. *See* Pl.'s SOF ¶ 48; Jacobs Tr. 40:5-14, ECF No. 41-5; Arfi Decl. ¶¶ 8, 10, ECF No. 37-30, Gerbenshagen Decl. ¶ 6, ECF No. 37-31. Neither Jacobs, Arfi, nor Gerbenshagen was LaPolice's supervisor, and they were not involved in decisions about her employment. *See* Pl.'s SOF ¶¶ 40, 43, 47, 54. LaPolice did not tell anyone else at FAM that she was pregnant before her eventual termination on December 13, 2022. Pl.'s SOF ¶ 49.

---

But because the challenged statements do not rise to the level of being "abusive," *id.* at *1, Defendant's motion to strike and LaPolice's cross-motion to strike are **DENIED**.

2

On October 26, 2022, a few days after LaPolice discovered that she was pregnant, Norah Emamjomeh, FAM's Executive Vice President of Strategic Accounts, finalized a reorganizational spreadsheet with two merchandiser positions listed as open. Pl.'s SOF ¶¶ 8, 37. On October 31— the same day and a few hours before LaPolice informed Jacobs of her pregnancy—Emamjomeh emailed the spreadsheet to FAM's Senior Vice President of Global Sourcing. Pl.'s SOF ¶ 38. FAM contends that in drafting the restructuring document, Emamjomeh and Nazy Salamat, Executive Vice President of Design, had determined that LaPolice's position in New York should be eliminated, and that two Los Angeles-based merchandisers should be hired for business and operational reasons. Def.'s Rule 56.1 Statement ("Def.'s SOF") ¶¶ 8, 33, 34, 37, ECF No. 37-2; Pl.'s SOF ¶¶ 8, 33, 34, 37. LaPolice disputes FAM's explanation of the spreadsheet. *See* Pl.'s SOF ¶ 37.

On December 13, 2022, Salamat terminated LaPolice from her position via phone. *See* Pl.'s SOF ¶ 50, 71. During their call, Salamat informed LaPolice that "unless you move to LA, it just doesn't work." Pl.'s SOF ¶ 50. In response, LaPolice said, "well I can't move to California because I am pregnant." Pl.'s SOF ¶ 51. Salamat testified that she learned of LaPolice's pregnancy in that moment. *See* Salamat Tr. 122:1-123:5, 128:23-129:4, ECF No. 41-4. Following the phone call, Salamat and Emamjomeh engaged in a text message exchange, which Emamjomeh asserts was how she was informed of LaPolice's pregnancy. Emamjomeh Tr. 90:6-11, ECF No. 41-3. LaPolice disputes Salamat and Emamjomeh's testimony, arguing that Salamat and Emamjomeh were aware of her pregnancy prior to the December 13 phone call. *See* Pl.'s SOF ¶¶ 52-53.

On August 11, 2023, LaPolice initiated this action, *see* Compl., ECF No. 1, amending her Complaint one month later, alleging pregnancy discrimination in violation of Title VII and NYCHRL, *see* Am. Compl., ECF No. 6. Following discovery, Defendant moved for summary judgment on all claims. Def.'s Mem. Supp. Mot. for Summ. J. ("Def.'s Br.") at 1, ECF No. 37-1.

3

LaPolice opposes the motion. Pl.'s Mem. Opp'n Mot. for Summ. J. ("Pl.'s Br.") at 1, ECF No. 43.

## LEGAL STANDARDS

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[3] The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).

In ruling on a motion for summary judgment, the court must view all evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affs*, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Johnson*, 680 F.3d at 236. But the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in his pleading . . . or on conclusory statements." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). "Affidavits submitted

---

[3] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated.

in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

### I. Title VII

Title VII prohibits an employer from "discharg[ing] any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The phrase "because of sex" includes "because of or on the basis of pregnancy." 42 U.S.C. § 2000e(k). Courts analyze Title VII claims under the three-step burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), which evaluates whether the plaintiff has put forth sufficient evidence of discrimination to overcome summary judgment. *See Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *Bart v. Golub Corp.*, 96 F.4th 566, 569 (2d Cir. 2024); *see also Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (asserting that the burden shifting analysis also applies to NYCHRL claims).

To establish a prima facie pregnancy discrimination claim, the plaintiff must first show that: "(1) [s]he belonged to a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown*, 673 F.3d at 150. Once the plaintiff has established her prima facie case, the burden then shifts to the employer to "'articulate some legitimate, nondiscriminatory reason' for its adverse action." *Bart*, 96 F.4th at 570 (quoting *McDonnell Douglas*, 411 U.S. at 802). Upon the defendant's showing, the burden again shifts to the plaintiff to prove that the employer's purported reason was pretext for discrimination. *See id.*; *see also Fields v. N.Y. State Off. of Mental Retardation &*

5

*Developmental Disabilities*, 115 F.3d 116, 120 (2d Cir. 1997) ("[A] Title VII plaintiff can prevail by proving that an impermissible factor was a motivating factor, without proving that the employer's proffered explanation was not some part of the employer's motivation.").

### A. Protected Status and Adverse Employment Action

Turning to LaPolice's prima facie case, the parties do not dispute the first (protected class) and third (adverse employment action) prongs of the *McDonnell Douglas* analysis. On prong one, the parties agree that LaPolice was a pregnant woman at the time of her termination. *See* Def.'s Br. at 9; Pl.'s Br. at 1. The parties also agree that LaPolice's termination, or "the elimination of her position" as FAM articulates it, constitutes an adverse employment action. Def.'s Br. at 9; *see* Pl.'s Br. at 1. The parties contest whether LaPolice has pleaded sufficient facts in support of prongs two and four of her prima facie case.

### B. Qualification

FAM contends that LaPolice was not qualified for her position as Senior Merchandising Manager, thus failing to fulfill prong two. *See* Def.'s Br. at 9-10. As evidence, it points to the fact that LaPolice "did not and would not" satisfy the company's written requirement to work from its California office five days a month. Def.'s Br. at 16. LaPolice points out, however, that the second prong focuses on qualification, not performance. *See* Pl.'s Br. at 13. A plaintiff must only show that she has the basic skills required to perform her job. *See Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012) ("It is unusual for a plaintiff to fail to meet this standard."); *see also Calabro v. Westchester BMW, Inc.*, 398 F. Supp. 2d 281, 288 (S.D.N.Y. 2005) (finding ample support in Second Circuit caselaw adhering to the notion that a plaintiff need only demonstrate that she was qualified for the position). Here, LaPolice argues that she was indisputably *qualified* for her position, as she occupied the role that she was hired into for several

6

years and was granted an opportunity to earn a bonus through an amendment to her offer letter. *See* Pl.'s SOF ¶ 12; Pl.'s Br. at 20-21.

Based on the parties' arguments, it is unclear to the Court whether an employee's willingness to work in a particular location goes to the issue of her qualification for a role (and the employee's prima facie case) or to her job performance (and the employer's burden to articulate a legitimate nondiscriminatory reason for the adverse action once a prima facie case has been established). In any event, the Court need not resolve that question because, as explained below, it concludes that LaPolice has not established a genuine dispute of material fact as to discriminatory intent.

### C. Inference of Discriminatory Intent

Next, FAM argues that LaPolice cannot show that her termination occurred under circumstances giving rise to an inference of discriminatory intent because there is no evidence that the decisionmakers involved in her termination were aware of her pregnancy prior to the adverse action. Def.'s Br. at 11. The Court agrees. The burden on plaintiffs in establishing their prima facie case in employment discrimination cases is "minimal." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001). However, the Second Circuit has joined its sister circuits in concluding that "a defendant's discriminatory intent cannot be inferred, even at the prima facie stage, from circumstances unknown to the defendant." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 82 (2d Cir. 2005). In so holding, the Second Circuit cited *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996), which affirmed that an employer's knowledge of a plaintiff's pregnancy is a critical element of the plaintiff's prima facie case. *See Woodman*, 411 F.3d at 81. As the Second and Third Circuits explained, "it is counter-intuitive to infer that the employer discriminated on the basis of a condition of which it was wholly ignorant." *Id.* (quoting *Geraci*, 82 F.3d at 581). Thus, if a pregnancy is not apparent and not disclosed by the plaintiff to her employer, she must

7

allege their knowledge and provide evidence from which a reasonable jury could infer her employer's knowledge of her pregnancy to establish a prima facie case. *See Geraci*, 82 F.3d at 581.

In this case, FAM asserts that Salamat and Emamjomeh were the only two people involved in the decision to eliminate LaPolice's position. Def.'s Br. at 10. They maintain that they were unaware of LaPolice's pregnancy when they made this decision and when they informed LaPolice of it on December 13. Def.'s Br. at 10. The three individuals who were aware—Jacobs, Arfi, and Gerbenshagen—declared under oath that they did not inform anyone, including Salamat and Emamjomeh, of LaPolice's pregnancy. Def.'s Br. at 10; *see* Jacobs Tr. 40:5-14; Arfi Decl. ¶¶ 8, 10; Gerbenshagen Decl. ¶ 6. They were also not involved in employment decisions pertaining to LaPolice. *See* Def.'s Br. at 10; Pl.'s SOF ¶ 54. LaPolice testified that she had no knowledge of Jacobs, Arfi, or Gerbenshagen informing anyone else about her pregnancy. LaPolice Tr. 221:14-18, ECF 41-2; *see* Def.'s Br. at 10. Moreover, it is clear that LaPolice did not herself disclose her pregnancy to Salamat or Emamjomeh. *See* Pl.'s SOF ¶ 49. LaPolice also does not assert that her pregnancy was apparent. *See generally* Am. Compl; Pl.'s Br.

      1.      **Text Message Evidence**

Nevertheless, LaPolice alleges that Salamat and Emamjomeh must have been aware of her pregnancy prior to her termination. As evidence of their knowledge, LaPolice points to a text exchange between Salamat or Emamjomeh that occurred directly after her termination call. The exchange is as follows:

    Emamjomeh:  Are you going to talk to Lauren today?
    Salamat:        I did 😢
    Emamjomeh:  You already did??
    Salamat:        Yes
                        Why you have a change of heart??
    Emamjomeh:  NO
                        Sorry….was it hard?

| | |
|---|---|
| Salamat: | Yes we both cried |
| | I cried because she was crying hard |
| Emamjomeh: | Oh no |
| Salamat: | She told me she was pregnant as I told her it wasn't working… 3 months… it's a boy |
| Emamjomeh: | You said it first or her/ |
| Salamat: | Yes! |
| | She was very appreciative of 6 weeks pay |
| Emamjomeh: | You? |

LaPolice Decl. Ex. 14.  LaPolice asserts that the only reasonable conclusion from this exchange is that Salamat knew that LaPolice was pregnant prior to their phone call and was asking who raised LaPolice's pregnancy first.  *See* Pl.'s Br. at 5-6.  FAM counters that Emamjomeh's question was whether Salamat informed LaPolice that her position was terminated first or whether LaPolice said she was pregnant first.  Def.'s Reply Supp. Mot. for Summ. J. ("Def.'s Reply") at 2, ECF No. 47.

  The Court does not find LaPolice's interpretation of the text exchange plausible.  The only testimony in the record indicates that, in Salamat's message, "I told her" and "she told me" refer to two revelations: the termination and the pregnancy, respectively.  Thus, "You said it first" refers to Salamat's message that LaPolice's employment with FAM was ending ("I told her it wasn't working").  The "her" in Emamjomeh's message refers to LaPolice's disclosure of her pregnancy ("she told me she was pregnant").  Emamjomeh testified that this is "unequivocally" what she meant and Salamat confirmed that this is what she understood Emamjomeh's question to be.  Emamjomeh Tr. 93:6-10, ECF No. 41-3; Salamat Tr. 129:13-129:21.  Though LaPolice rejects Salamat and Emamjomeh's explanation—which corresponds with the Court's understanding—as "spin," Pl.'s Br. at 6, FAM rightly points out that their testimony is "the only evidence of what the actual sender and receiver meant and heard."  Def.'s Reply at 2.

  LaPolice justifies her interpretation by arguing that Salamat and Emamjomeh must have learned of her pregnancy from Jacobs, who worked directly with Emamjomeh.  *See* Pl.'s Br. at 1; *see also* Pl.'s Br. at 8-9 ("A jury could reasonably find that Jacobs brought her concerns about

9

LaPolice's ability to continue in her role after giving birth to her supervisor."). But Jacobs testified that she did not tell anyone else. *See* Jacobs Tr. 40:5-14. And LaPolice, when questioned on whether she had any information or knowledge that Jacobs, Arfi, or Gerbenshagen had told anyone about her pregnancy, responded, "I am unaware." LaPolice Tr. 221:14-18.[4] Ultimately, LaPolice offers no evidence in support of her interpretation of the text exchange, only the insinuation that three witnesses must have lied about it under oath.

Although questions of witness credibility are usually reserved for the jury, "[b]road, conclusory attacks on the credibility of a witness will not, by themselves, present questions of material fact" for trial. *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005); *see also Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993) (stating that plaintiffs "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."). Here, LaPolice presents no evidence, besides conclusory assertions, to raise an issue of material fact about Jacobs's testimony—or Salamat and Emamjomeh's testimony, for that matter. Given the plain language of the text exchange and LaPolice's own testimony that she was unaware of Jacobs, Arfi, or Gerbenshagen telling Salamat and/or Emamjomeh about her pregnancy, the Court concludes that LaPolice's preferred interpretation of the text message exchange is wholly implausible.[5] Thus, the text exchange does not raise a triable issue of fact as to FAM's knowledge about LaPolice's pregnancy.

---

[4] LaPolice alleges that a reasonable jury could find that Jacobs's comments saying "being a mom can change you" and that she might not want to work after having a baby motivated Jacobs to bring her concerns to Emamjomeh about LaPolice's ability to continue working after giving birth. Pl.'s Br. at 8-9. The Court does not find LaPolice's contentions to raise a genuine dispute of material fact. LaPolice offers no specific facts to support her conclusory statements about Jacobs informing Emamjomeh, and "speculation alone is insufficient to defeat a motion for summary judgment." *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006).

[5] The Court is similarly unpersuaded by LaPolice's argument that Emamjomeh's deposition testimony serves as evidence for the plausibility of LaPolice's interpretation of the text messages. When asked by counsel, "Can you understand how someone could look at these text

10

### 2. Temporal Proximity

LaPolice also alleges that the temporal proximity between Salamat and Emamjomeh's discussion of her termination and LaPolice's disclosure of her pregnancy to Jacobs raises an inference of discrimination as a matter of law. *See Lenzi v. Systemax, Inc.*, 944 F.3d 97, 108 (2d Cir. 2019) (affirming that the termination of plaintiff's employment less than a month after she disclosed her pregnancy was sufficient to raise an inference of discrimination to carry her de minimis burden). In *Lenzi*, however, the plaintiff had disclosed her pregnancy to the individuals involved in the decision to terminate her employment. Here, the same is not true. *See* Pl.'s SOF ¶ 49. Therefore, there can be no inference of discrimination as a matter of law. *See Romero v. St. Vincent's Servs., Inc.*, No. 19 Civ. 7282, 2022 WL 2079648, at *7 (E.D.N.Y. June 10, 2022) (holding that temporal proximity was insufficient "to save [plaintiff's] pregnancy discrimination claims" where she had failed to adduce evidence that employer knew about her pregnancy), *aff'd*, No. 22 Civ. 1476, 2023 WL 3477161 (2d Cir. May 16, 2023); *see also El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext."). Even considering the close temporal proximity between LaPolice informing Jacobs of her pregnancy on October 31 and a November 17 text exchange between Salamat and Emamjomeh in which they discuss LaPolice's termination, *see* LaPolice

---

messages and think that you're asking . . . who brought up [the] pregnancy first?," Emamjomeh responded, "I think if you only look at this one little two-thing text, then, yes, maybe you can look at it that way." Emamjomeh Tr. 94:4-10. Emamjomeh's statement that the messages could hypothetically be read differently if taken out of context does not undermine the conclusion that the meaning of the message is clear when read in context. *See id.* And in any event, Emamjomeh's opinion about how the messages *could be* interpreted by an outsider is irrelevant—what matters is what *she* meant, and the only evidence in the record is that she did *not* mean to suggest that Salamat knew about LaPolice's pregnancy.

11

Decl. Ex. 14, ECF. No 40-14, "more" is required for the Court to presume an inference of discrimination given that Jacobs was not involved in the decision to terminate LaPolice's position. *See Stainkamp v. Changes Int'l of Fort Walton Beach, Inc.*, 373 F. Supp. 2d 163, 166 (E.D.N.Y. 2005) ("In cases in which the employer claims that the decision to terminate was made prior to learning of the plaintiff's protected status, the plaintiff must also 'adduce some evidence, whether direct or indirect, indicating a defendant's knowledge' of the plaintiff's membership in the protected class." (quoting *Woodman*, 411 F.3d at 83)).

From the evidence presented, no reasonable jury could conclude that Salamat or Emamjomeh knew about LaPolice's pregnancy when they made the decision to terminate her employment with FAM. Discriminatory intent thus cannot be inferred here because LaPolice's pregnancy was a "circumstance[] unknown to the defendant," *Woodman*, 411 F.3d at 82; *see also McKenna v. Santander Inv. Sec., Inc.*, No. 21 Civ. 941, 2022 WL 2986588, at *9 (S.D.N.Y. July 28, 2022) (dismissing plaintiff's pregnancy discrimination claims where her employer created a restructuring plan and decided to terminate her before she disclosed her pregnancy to the company). Accordingly, the temporal proximity of LaPolice's informing Jacobs of her pregnancy and her termination is not sufficient to satisfy the fourth prong of her prima facie case.

## II.    NYCHRL

Consistent with Title VII, "pregnancy discrimination is a form of gender discrimination under the NYCHRL." *Romero*, 2023 WL 3477161, at *2. To prevail on liability, the plaintiff need only show that she was treated "less well" than other employees, resulting from her employer's discriminatory intent because of her gender. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 111 (2d Cir. 2013). LaPolice must still establish her prima facie case and her employer may "offer legitimate reasons for its actions." *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 75-76 (2d Cir. 2015). "[D]istrict courts may [] grant summary judgment with

respect to NYCHRL claims if there is no genuine dispute as to any material fact regarding plaintiff's claim and the employer's affirmative defense." *Mihalik*, 715 F.3d at 112; *see also Ya-Chen Chen*, 805 F.3d at 76 ("[S]ummary judgment is appropriate if the record establishes as a matter of law that discrimination or retaliation played no role in the defendant's actions.").

As with her Title VII claim, LaPolice's NYCHRL claim requires a showing that her termination was caused by FAM's discriminatory motive. *See Mihalik*, 715 F.3d at 110 ("The plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive."). However, given the evidence that the two individuals who participated in her termination decision were unaware of her pregnancy, LaPolice is unable to show that her termination was because of gender-motivated discriminatory intent. Accordingly, LaPolice has failed to establish a genuine dispute as to any material fact regarding her NYCHRL claim.[6]

LaPolice has failed to establish her prima facie case and, as a matter of law, her Title VII and NYCHRL pregnancy discrimination claims must be dismissed.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is **GRANTED** and the parties' cross-motions to strike are **DENIED**. The Clerk of Court is respectfully requested to terminate ECF Nos. 37, 46, and 48, and to close this case.

SO ORDERED.

Dated: August 18, 2025

    New York, New York

---

[6] Because LaPolice has not established a prima facie case under the NYCHRL, the Court need not reach Defendant's alternative argument that LaPolice cannot rely on the NYCHRL because she worked primarily from her home in Connecticut at the time of her termination. *See* Def.'s Br. at 23-24.

_____
DALE E. HO
United States District Judge